THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OBENTO UNLIMITED, d/b/a Chinese Menu Online, and P&F HAPPINESS RESTAURANT,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>QMENU INC.,<br><br>　　　　　Defendant. | No. 20 C 7391<br><br>Judge Jorge L. Alonso |

## Memorandum Opinion and Order

This case centers around Plaintiffs' allegations that Defendant exploited a vulnerability in an online Google service that allowed Defendant to reroute online restaurant orders through Defendant's platform instead of Plaintiff Chinese Menu Online's food-ordering platform. Currently pending before the Court are three motions filed by Defendant: (1) a motion to transfer venue [15]; (2) a motion to dismiss for failure to state a claim and motion to strike class allegations [17]; and (3) an amended motion to sever the individual Plaintiffs' claim against Defendant [54]. For the reasons below, the Court grants Defendant's motion to transfer [15] and leaves the other motions to the Northern District of Georgia.

## Background

The Court takes the following facts from Plaintiffs' complaint.[1] [1]. Plaintiff Obento Limited (which does business as Chinese Menu Online and is therefore referred to as "CMO") is

---

[1] Although Plaintiffs appeal to diversity jurisdiction, the Court is not bound by Plaintiffs' characterization. *See Alicea-Hernandez v. Archdiocese of Chicago*, Case No. 01-cv-8374, 2002 WL 598517, at *1 (N.D. Ill. April 18, 2002) ("Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff").

a Hong Kong business entity with its principal place of business in Hong Kong. Its sole members are Amanda Chan and Tao Xie, both of whom reside outside the United States and are not United States citizens. Plaintiff P&F Inc. (doing business as Happiness Restaurant) (hereafter "P&F") is a corporation organized under the laws of Illinois with its principal place of business in Chicago, Illinois. Defendant qMenu, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Peachtree Corners, Georgia.

CMO creates websites and assists businesses with taking online food orders. To do this, CMO manages restaurants' Google My Business ("GMB") listings. Although no party explains the exact mechanics, the Court infers that Google offers an online service known as Google My Business, which allows businesses to create and personalize a business profile that customers using Google's online search feature can see. One of this service's features—redirecting clients to a restaurant's online food ordering website—is at the center of this dispute.

Plaintiffs allege that CMO entered into contracts, oral and written, with various restaurants to manage their GMB listings and assist with online food ordering in exchange for a fee. Plaintiffs further allege that Defendant—another business in the online ordering platform space—discovered a vulnerability in the GMB platform software that allowed it to change, without authorization, a restaurant's GMB listing and redirect potential customers to online ordering websites managed by Defendant. According to Plaintiffs, Defendant did this to a variety of restaurants across the United States, including restaurants, such as P&F, that contracted with CMO to manage their GMB listing.

---

The Court has federal-question jurisdiction over this case because, in Count I, Plaintiffs asserts a claim for false designation of origin under 15 U.S.C. § 1125(a).

Plaintiffs filed this putative class action bringing the following counts: (i) unfair competition under 15 U.S.C. §1125(a) (all Plaintiffs against qMenu); (ii) tortious interference with contract (CMO against qMenu); (iii) tortious interference with prospective economic advantage (one claim for CMO against qMenu and one claim for class members against qMenu); (iv) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (all Plaintiffs against qMenu); (5) violations of the Georgia Fair Business Practices Act, O.C.G.A. §10-1-390, et seq. (all Plaintiffs against qMenu); and (6) unjust enrichment (CMO against qMenu).

## Discussion

Before the Court are Defendant's three motions: (1) a motion to transfer; (2) a motion to dismiss and strike class allegations; and (3) a motion to sever. Defendant's motion to transfer asks the Court to transfer this case to the Northern District of Georgia. Because the Court concludes that transfer to the Northern District of Georgia is appropriate in this instance, it refrains from considering Defendant's two remaining motions, leaving those issues to the District Court for the Northern District of Georgia.

Under 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil matter to another district where venue is proper. A court may transfer a case if a moving party shows that: (1) venue is proper in the district where the action is originally filed; (2) venue would be proper in the transferee court; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). The movant bears the burden of establishing that the alternative forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

Here, the parties agree that venue is proper in this district and in the Northern District of Georgia. The Court, therefore, addresses only the convenience and interest of justice factors.

## I.  Convenience Factors

Turning to the convenience factors, the Court considers five subfactors related to the convenience of the parties and witnesses: (1) plaintiff's initial choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses to be called to testify in the case; and (5) the convenience of the parties themselves. *Westminster Investments, LLC v. International Thoroughbred Breeders, Inc.*, Case No. 06-C-6189, 2007 U.S. Dist. LEXIS 32628, 2007 WL 1302974, at *3 (N.D. Ill. May 2, 2007).

### A.  Plaintiff's Initial Choice of Forum

"The plaintiff's choice of forum is generally entitled to substantial weight, especially when it is the plaintiff's home forum." *Id.* "However, where the plaintiff's choice of forum has a relatively week connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened." *Id.* Moreover, courts afford less deference to a plaintiff's choice of forum when the plaintiff represents a class. *See Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 777 (N.D. Ill. 2019); *Humphrey v. United Healthcare Servs., Inc.*, No. 14–cv–1157, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014); *Lafleur v. Dollar Tree Stores, Inc.*, No. 1:11–cv–8473, 2012 WL 2280090, at *3 (N.D. Ill. June 18, 2012); *Nero v. Am. Family Mut. Ins. Co.*, No. 11–cv–1072, 2011 WL 2938138, at *2 (N.D. Ill. July 19, 2011); *Ashland Jewelers, Inc. v. NTR Metals, LLC*, No. 10–cv–4690, 2011 WL 1303214, at *7 (N.D. Ill. March 31, 2011); *Simonoff v. Kaplan, Inc.*, No. 09–cv–5017, 2010 WL 1195855, at *1 (N.D. Ill. March 17, 2010); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009); *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007).

In this case, P&F is based in Illinois and therefore its choice to file in this district is entitled to some deference. CMO's home forum is Hong Kong and therefore has no weight in this analysis. But because P&F seeks to represent a putative class, the Court affords that initial choice of forum less deference than usual. Plaintiffs seek to represent a class containing "[a]ll restaurants whose GMB listings Defendant accessed without owner consent or authorization between April and July 2020 and caused the restaurant to lose customer orders." [1] at ¶10. If the class becomes certified, "the named Plaintiff['s] choice of venue will not be the home venue for all plaintiffs and any venue selection is bound to be inconvenient to some plaintiffs." *Jaramillo*, 664 F. Supp. 2d at 914. Under these circumstances, the Court discounts Plaintiffs' choice of forum, though does not disregard it entirely. *Simonoff*, 2010 WL 1195855, at *1 (collecting cases); *see also Nero*, 2011 WL 2938138, at *2; *Jaramillo*, 664 F. Supp. 2d at 914.

B. Situs of Material Events

Based on the allegations, the significant situs of events occurred in Georgia where qMenu and its employees reside. The conduct at issue on qMenu's part—allegedly manipulating the restaurants' GMB listing—occurred there. As for the prospective class, Plaintiffs allege that the harm of qMenu's misconduct occurred throughout the United States and identify a large host of prospective class members from 48 different states. [36-1]. Therefore, with respect to the prospective class, the harm felt by these restaurants occurred throughout the country. Overall, the Court finds this factor weighs in favor of transfer.

C. Ease of Access to Sources of Proof

Both parties argue, to rebut the other side's claims on inconvenience, that electronic methods of communications make documents and other information readily available regardless of geographic location. Indeed, Plaintiffs and Defendant both acknowledge in their discovery

responses that all documentation is available electronically. Therefore, with respect to ease of access to sources of proof, the Court finds this factor neutral. *See In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) (noting that changes of venue motivated by travel inconvenience should be infrequent because "[t]oday documents can be scanned and transmitted by email").

### D.  Convenience of the Witnesses

With respect to witnesses, "[t]he party seeking transfer must specify the key witnesses to be called and establish that the nature and quality of their testimony with respect to the issues in the case warrant the case's transfer." *Westminster*, 2007 WL 1302974, at *4. "The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Images of the World, Inc. v. Continental American Industries, Inc.*, Case No. 04-cv-7002, 2005 WL 2171193, at *7 (N.D. Ill. Aug. 30, 2005) (internal citations omitted). But the convenience of witnesses within a party's control, such as its employees, is far less important than the convenience of non-party witnesses. *Simonian v. Hunter Fan Co.*, No. 10–cv–1212, 2010 WL 3975564, at *3 (N.D. Ill. Oct. 7, 2010) (citing *Int'l Truck & Engine Corp. v. DowHammond Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002)).

In this case, the convenience of witnesses favors transfer. Plaintiffs identify one witness—Peng Lin, on behalf of P&F—located in Illinois. Plaintiffs' other identified witnesses span across the United States, China, and Malaysia. Collectively, the parties do not identify any non-party or non-employee witnesses located in either Illinois or Georgia. Defendant qMenu's discovery responses, however, identify six individuals—four of whom reside in Georgia and have the most knowledge of qMenu's actions with respect to the GMB platform. The location of these witnesses tips this factor in favor of transfer.

6

In response to qMenu's identification of witnesses in Georgia, Plaintiffs argue that the putative class members should outweigh the significance of Defendant's witnesses, that Georgia is not the clearly more convenient forum because depositions can be conducted remotely, and that the burden on P&F would be greater than the burden on qMenu and its employees to travel to Georgia for trial. The Court is not persuaded by these justifications.

First, when considering a witness's significance, the Court must look to the nature and quality of the witness's testimony on the issues in the case. *AL and PO Corp. v. American Healthcare Capital, Inc.*, Case No. 14-cv-1905, 2015 WL 738694, at *4 (N.D. Ill. 2015). Thus, to the extent that the Court considers the testimony of the putative class, it must do so through the lens of what testimony will be most critical in the case. And here, the putative class's testimony, including the class representative, would be pertinent to the issue of authorization for GMB listing services, but likely little else. Whereas the testimony of qMenu's employees is likely to be significant on Defendant's conduct and the ultimate issues in the case.

Second, the argument that depositions can be conducted remotely cuts against both parties. To be sure, the advancement of electronic communication, including remote-video conferencing, mitigates many travel inconveniences. *See In re Hudson*, 710 F.3d at 719. But to the extent that the parties attempt to conduct in-person discovery or must appear in-person for trial, the inconvenience to witnesses factor favors transfer.

Third, while the Court is sympathetic to the burdens of traveling for a trial, both parties would experience an inconvenience regardless of whether this case remains in this district or is transferred to Georgia. Indeed, even for employee-witnesses, testifying at trial requires travel and disruption of one's personal life. *See Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998). The fact remains, however, that Defendant identifies more

expected witnesses who have relevant and important testimony and are in Georgia. Accordingly, the Court finds that this factor weighs in favor of transfer.

### E. Convenience of the Parties

With respect to convenience of the parties, the Court considers the parties' respective residences and their ability to bear the expenses of litigating in a particular forum. *Habitat Wallpaper Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470, 474 (N.D. Ill. 1992). Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." Chemical Waste Management, Inc., 870 F. Supp. 870, 876 (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)).

Here, Plaintiffs and Defendant are located in different forums, and thus both forums are inconvenient to someone. Further, Plaintiffs argue that P&F would bear the greater burden traveling to Georgia because it is a small business, and its proprietor cannot afford to be away from the restaurant for long. But qMenu also claims that it would cause hardship to its principal officers to travel to the Northern District of Illinois for appearances and trial. The use of technology, however, may alleviate some of these concerns for both sides. Overall, given the slight deference afforded to Plaintiff's choice of forum, the Court finds that this factor weighs against transfer.

## II.  Interest of Justice

Lastly, the Court considers which forum best serves the interest of justice. The interest of justice factor focuses on the court's efficient administration and not on the underlying dispute's merits. *Westminster*, 2007 WL 1302974, at *4. "This analysis also includes considerations such as '(1) the speed at which a case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the

8

desirability of resolving controversies in their locale.' [] Even where the convenience of the parties and witnesses may call for a different result, the 'interest of justice' component may be determinative in a particular case." *Id.* (internal citations omitted).

### A. Speed to Trial

To evaluate the speed at which a case will proceed, courts look to two statistics: "(1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Juarez v. Nat'l Ry. Passenger Corp.*, No. 06–cv–3681, 2007 WL 2713357, at *3 (N.D. Ill. Sept. 12, 2007). The Court takes the following statistics from the Federal Court Management Statistics as of June 30, 2021.[2] In the North District of Illinois, the median time from filing to disposition for a civil case is 14.2 months; the median time from filing to trial for a civil case is 48.1 months. In the Northern District of Georgia, the median time from filing to disposition for a civil case is 6.5 months; the median time from filing to trial for a civil case is 30.8 months. Accordingly, the Court finds that this factor weighs in favor of transfer.

### B. Familiarity with the Applicable Law

Plaintiffs bring claims for (1) unfair competition under 15 U.S.C. §1125(a), (2) tortious interference with contract, (3) tortious interference with prospective economic advantage, (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq., (5) violations of the Georgia Fair Business Practices Act, O.C.G.A. §10-1-390, et seq., and (6) unjust enrichment. Because Count I is premised on federal law, the Northern District of Illinois and Northern District of Georgia are equally familiar with the law on that

---

[2] These statistics are available online at:
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf

claim. Similarly, Georgia and Illinois both recognize claims for tortious interference with contract and tortious interference with prospective economic advantage, with possible distinctions in the labels used. *See Grecian Delight Foods, Inc. v. Great American Insurance Company of New York*, 365 F. Supp. 3d 948, 954 (N.D. Ill. 2019) (recognizing tortious interference with contract claim under Illinois law); *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 825 (N.D. Ill. 1998) (recognizing tortious interference with prospective business advantage claim under Illinois law); *Sweet City Landfill LLC v. Lyon*, 352 Ga. App. 824, 833-34 (Ga. App. Ct. 2019) (recognizing independent torts of tortious interference with business relations and tortious interference with contractual relations). The same goes for Count VI (unjust enrichment). *See National Union Fire Ins. Co of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶67, 393 Ill. Dec. 495, 514-15 (Ill. App. Ct. 2015) (recognizing unjust enrichment as a standalone claim under Illinois law); *Crook v. Foster*, 333 Ga. App. 36, 39, 775 S.E.2d 286, 289 (Ga. App. Ct. 2015) (recognizing unjust enrichment as an equitable claim under Georgia law). With respect to Count IV, this Court is likely more familiar with that count since it emanates from an Illinois state law. Likewise, the Northern District of Georgia is likely more familiar with Count V since it emanates from a Georgia state law. In summary, the Court finds this factor neutral.

### C. The Community's Relation to the Occurrence at Issue and Desirability of Resolving Controversies in their Locale

With respect to the last two factors, the Court finds that neither weighs in favor or against transfer. Although P&F is an Illinois restaurant, and therefore Illinois has some interest in redressing its alleged injury, Georgia equally has an interest in redressing any alleged injury for its constituents, which includes putative class members from Georgia. As such, the Court finds that these factors are neutral.

In summary, the Court finds that the weight of the relevant factors supports transfer. In this case, the convenience of the witnesses and interest of justice factors both favor transfer to the Northern District of Georgia. These factors outweigh the Plaintiffs' initial choice of forum, especially since that deference is discounted because Plaintiffs seek to represent a putative class.

## Conclusion

For the reasons set forth above, the Court grants Defendant's motion to transfer [15]. This case is transferred to the Northern District of Georgia.

**SO ORDERED.**                                    ENTERED: September 20, 2021

_____
**HON. JORGE ALONSO**
**United States District Judge**