**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity; P & F INC. DBA HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated, | ) ) ) ) ) ) | Case No. 1:21-CV-03949-SCJ |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | |
| QMENU, INC., a Georgia corporation, | ) ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

Pursuant to Local Rule 16.2, Plaintiffs, Obento Limited d/b/a Chinese Menu Online and P&F Inc. d/b/a Happiness Restaurant, on behalf of itself and all others similarly situated (collectively, "Plaintiffs"), and Defendant qMenu, Inc. ("Defendant"), jointly submit this Preliminary Report and Discovery Plan as follows:

1.    **Description of Case:**

    (a)    Briefly describe the nature of this action.

    **Plaintiffs:** This is a class action lawsuit arising out of Defendant's illegal and opportunistic exploitation of a vulnerability in the Google My Business ("GMB")

platform between April and July 2020.  Prior to and upon discovering this vulnerability, Defendant deliberately sought to tarnish Chinese Menu Online's reputation and undermine the business relationships between Chinese Menu Online and its restaurant clients through misrepresentations and deceptive and unfair methods of competition designed to wrest control of the restaurants' GMB listings. Defendant also caused, without regard to the adverse consequences of its scheme, the putative class of restaurants to lose customer orders when Defendant's anti-competitive methods actually caused technical defects in the class members' GMB listings by, among other things, causing the GMB listings to link to nonfunctioning or nonexistent websites.

Plaintiffs object to severance of any claims.  Because Plaintiffs' allegations against qMenu are based on a common scheme to disrupt the business relationship between CMO and its clients, whereby qMenu attempted to wrest control of CMO's restaurant clients' GMB pages, and without any regard for the impact that its scheme would have on the restaurants' ability to conduct a take-out and food delivery operation, Plaintiffs contend that severance would be highly improper. Plaintiffs further contend that severance would be inefficient, require overlapping lawsuits, and waste party and judicial resources as a result of duplicative investigation, discovery, and expert witness testimony.

~ 2 ~

**Defendant:** Defendant qMenu, Inc. ("Defendant" or "qMenu") denies any unauthorized modifications of restaurant GMB pages, denied making any misrepresentations to restaurant owners or others, and denies engaging in any deceptive or unfair methods of competition with Plaintiff Obento Limited d/b/a Chinese Menu Online ("CMO").  Defendant asserts that Plaintiffs have failed to assert a viable causes of action and/or a valid basis for entitlement to recovery for: (1) false designation of origin under the Lanham Act (15 U.S.C. § 1125(a); (2) tortious interference with contract under Georgia law (O.C.G.A. § 51-12-30); (3) tortious interference with potential business relations under Georgia law (O.C.G.A § 51-9-1); (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.); (5) violations of the Georgia Fair Business Practices Act (O.C.G.A. § 10-1-390 et seq.); (6) unjust enrichment; (7) intentional misrepresentation (O.C.G.A. §§ 51-6-2 and 23-2-52); (8) recovery of punitive damages under Georgia law (O.C.G.A § 51-12-5.1); or (9) recovery of attorneys' fees and expenses of litigation under Georgia law (O.C.G.A. § 13-6-11).

Defendant further asserts that on the face of the Amended Complaint, Plaintiffs fail to satisfy the requirements for class certification under Fed. R. Civ. P. 23, and that the class action claims should accordingly be dismissed on the pleadings.  Lastly, Defendant also notes that because CMO has engaged in the exact

same behavior that it accuses qMenu of undertaking, joinder of CMO's claims with those of Plaintiff P&F Inc. d/b/a Happiness Restaurant ("P&F") are improper, and should be severed pursuant to Fed. R. Civ. P. 21.

(b)   Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.

**Plaintiffs' Summary:**

Plaintiff Obento Ltd., which does business as Chinese Menu Online, creates for its restaurant clients online ordering websites, assists with the taking of online food orders, and manages GMB listings for its restaurant clients, including the websites linked to the GMB listings.  Since late 2018, Chinese Menu Online has entered into written agreements with its restaurant clients, including, but not limited to, the Class Members.  Pursuant to these agreements, Chinese Menu Online would, in pertinent part, manage its restaurant clients' GMB listings and assist with their online ordering in exchange for a fee.

Beginning in or around April 2020, Defendant discovered a vulnerability, bug, or bypass in the GMB platform software that Defendant used to learn and exploit confidential log-in information for non-client restaurants' GMB listings, all without the restaurants' authorization.  The GMB platform software allowed Defendant to request the log-in credentials for a restaurant's GMB listing, irrespective of whether Defendant had the restaurant's consent or authorization.   More specifically, upon

Defendant's submission of the request for access to a restaurant's GMB listing, the GMB platform software, rather than notifying the restaurant or Chinese Menu Online, which had been designated by the restaurant as the authorized manager of its GMB listing, would send Defendant two emails.  The first email notified Defendant that its request for ownership of a GMB listing would be forwarded to the current owner of the same listing.  Unfortunately, the GMB platform software then sent Defendant a second email, which should have been sent to the current owner or manager of record of the GMB listing, that gave Defendant the credentials to access and modify the GMB listing.  It was this second email that gave Defendant the opportunity to take control of the GMB listing.

In an effort to capitalize on the GMB platform software's vulnerability, to realize its own financial gain, and to harm the goodwill and financial health of its competitor, Chinese Menu Online, Defendant developed a nationwide scheme to target restaurants in myriad jurisdictions and disrupt and interfere with their GMB listings and their preexisting relationships with other online food ordering services, such as Chinese Menu Online.  For each of the Class Members or Chinese Menu Online's restaurant clients, Defendant knew it should not use the credentials sent in the second email, since it did not have the restaurant's written consent to manage the GMB listing, but Defendant still used the credentials to modify the GMB listings so

they would link to online ordering websites created by Defendant and from which Defendant would demand commissions on all food orders placed with the restaurants.  Once Defendant seized on this vulnerability, Chinese Menu Online and the Class Members were unable to regain control of the GMB listings.

Compounding the problem, Defendant directed restaurants' potential customers to nonfunctional or nonexistent websites.  This caused the Class Member restaurants to lose a significant number of orders and amount of revenue during an already precarious financial time due to COVID-19-related restrictions.  They also suffered losses of reputation and loss of goodwill in the community, as a direct and proximate result of Defendant's hijacking of its GMB listing and diversion of customers and potential customers to a nonfunctioning or nonexistent website.  Also as a result of Defendant's scheme, the GMB listings of many Class Members have become unclaimable, meaning the GMB listings have become locked, resulting in additional monetary loss for the Class Members.  Notably, Chinese Menu Online was not the only entity affected by Defendant's scheme, as Defendant targeted other business competitors' clients, too.

Ultimately, Defendant obtained access to, and subsequently altered, the GMB listings for more than 600 restaurants with whom Chinese Menu Online had a preexisting contractual relationship.  Defendant also, on information and belief,

accessed and altered the GMB listings for myriad more restaurants with whom Defendant and Chinese Menu Online had no preexisting contractual relationship. Defendant's actions were and are in direct violation of Google's Terms and Conditions. Chinese Menu Online has suffered extensive loss of revenue and harm to its business as a direct and proximate result of Defendant's unlawful and wrongful actions.

**Defendant's Summary:**

China-based Plaintiff CMO and Georgia-based Defendant qMenu are competitors in the online ordering platform space. CMO alleges that it enters into various, unspecified oral and written contracts with unidentified restaurants, pursuant to which it managed that restaurant's online ordering but fails to provide any of the details of any such contract, including even the purported contract with P & F. Plaintiffs allege that, in or around April 2020, qMenu exploited a "bug" or "vulnerability" in the GMB platform which allowed it to access restaurants' GMB listings without their authorization. Plaintiffs offer no explanation of the nature of the alleged "vulnerability, bug, or bypass," or how qMenu came into possession of the restaurants' confidential log-in information without their knowledge or consent. Plaintiffs allege that qMenu "changed" these unspecified restaurants' log-in information without their consent, which allowed it access to their accounts.

Plaintiffs allege that qMenu temporarily redirected the processing of on-line ordering from CMO to qMenu, or to non-functioning websites, causing them damage.  P & F, the proposed class representative and only identified class member, identifies a loss of revenue of $7,500, without any explanation of how that number was derived, or how it determined that any "lost" orders can be attributed to qMenu. Indeed, P & F acknowledges that the alleged issue with unauthorized access to its GMB page arose on or shortly before June 19, 2021, and that P & F agreed to allow qMenu to continue to take orders for his restaurant and to access its GMB page as a manager. P & F has further acknowledged that qMenu did not damage its GMB page.

P & F seeks to represent a geographically unlimited class of restaurants whose GMB listings, it speculates, may have also been "accessed" by qMenu without permission, potentially causing those restaurants to lose orders. qMenu maintains that it never "accessed" any restaurants' GMB listings without authorization or permission.  Defendant contends that no class should be certified in this case, that Plaintiffs' legal claims are without merit and that they are not entitled to any of the relief sought in the Complaint.

qMenu further contends that it was Plaintiff who logged into and gained control over GMB pages without authorization, and transferred online menu

platforms from qMenu to itself, causing significant damage to qMenu.  qMenu intends to file counterclaims against CMO.

(c)    The legal issues to be tried are as follows:

**Plaintiffs' Issues:**

•    Whether Defendant had prior authorization or consent from the restaurant clients of Chinese Menu Online and/or the Class Members with regard to the GMB listings for which it claimed management or administrative privileges between May and July 2020?

•    Whether Defendant misrepresented to third parties between May and July 2020 that it was the authorized administrator of the GMB listings of Chinese Menu Online's restaurant clients and/or the Class Members?

•    Whether Defendant intentionally, wantonly, willfully, and/or maliciously interfered with and/or frustrated the purpose of Chinese Menu Online's oral and written contracts with its restaurant clients by usurping control over the restaurant clients' GMB listings for which Defendant lacked prior authorization or consent?

•    Whether Defendant deceptively or unfairly wrested control of the administrative or managerial privileges for the GMB listings belonging to Chinese Menu Online's restaurant clients and/or the Class Members?

- Whether Defendant's modifications to the Class Members' GMB listings between May and July 2020 caused the listings to be linked to a defective online ordering website created by Defendant, which in turn, caused the Class Members to suffer financial loss through their loss off customer orders and/or their GMB listings to be unclaimable?

- Whether Defendant collected commissions on customer orders to which it was not entitled because it linked restaurants' GMB listings to a website created by Defendant even though Defendant did not have prior authorization or consent to do so?

- Whether Chinese Menu Online suffered financial loss, loss of revenue or commissions, and loss of goodwill as a result of Defendant's interference with Chinese Menu Online's preexisting relationships with its restaurant clients to manage or administer their GMB listings?

- Whether Defendant caused actual confusion or actual misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of and with the GMB listings and related websites belonging to Chinese Menu Online's restaurant clients and/or the Class Members?

- Whether Defendant's misconduct has caused the Class Members and Chinese Menu Online to suffer irreparable injury to their businesses, reputation, and

goodwill that cannot be redressed by monetary damages, and in turn, entitles Plaintiffs to a permanent injunction requiring Defendant to cease and desist from engaging in unfair or deceptive practices.

- Whether Plaintiffs are entitled to actual damages, treble damages, punitive damages, attorney fees, litigation costs, and exemplary damages as a result of Defendant's violations of Illinois and Georgia deceptive business practice statutes.

- Whether Defendant's bad faith misconduct caused Chinese Menu Online to have to expend substantial sums to defend itself in litigation with a competitor who was deceived into believing that the misconduct was perpetrated by Chinese Menu Online?

**Defendant's Issues:**

(1)     Whether Plaintiff P & F's claims satisfy the class certification requirements of Fed. R. Civ. P. 23(a), as well as Rule 23(b)(2) and/or Rule 23(b)(3);

(2)     Whether qMenu engaged in "False Designation of Origin" under 15 U.S.C. § 1125(a)(1)(A) as to Plaintiffs or any members of the putative class;

(3)     Whether qMenu violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* as to Plaintiffs or any members of the putative class;

(4)     Whether qMenu violated the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.*, as to Plaintiffs or any members of the putative class;

(5)     Whether qMenu tortiously interfered with any of CMO's contractual relations;

(6)     Whether qMenu tortiously interfered with any potential busines relations of P & F or any members of the putative class;

(7)     Whether qMenu was unjustly enriched by its alleged conduct;

(8)     Whether qMenu made misrepresentations to P & F or any members of the putative class;

(9)     Whether P & F or any members of the putative class relied on any alleged misrepresentations of qMenu;

(10)    Whether some or all of the claims asserted by Plaintiffs or the members of the putative classes are barred by the applicable statute of limitations;

(11)    Whether Plaintiffs or the members of the putative class have been damaged as a proximate result of any conduct of qMenu;

(12)    Whether Plaintiffs or the members of the putative class have established the requirements for the imposition of equitable relief;

(13)    Whether the application of multiple states' laws to Plaintiffs' claims renders the putative class unmanageable as a matter of law;

(14)   Whether any of Plaintiffs' claims are barred under the doctrines of waiver or unclean hands;

(15)   Whether Plaintiffs can demonstrate any conduct on the part of Defendant sufficient to warrant an award of punitive, exemplary or treble damages;

(16)   Whether Plaintiffs are entitled to an award of attorneys' fees and/or expenses of litigation

(17)   Whether Plaintiffs' claims are barred by the doctrines of forfeiture, set-off and/or recoupment;

(d)   The cases listed below (include both style and action number) are:

(1)   Pending Related Cases: **N/A**

(2)   Previously Adjudicated Related Cases: **N/A**

**2.   This case is complex because it possesses one or more of the features listed below (please check):**

 **X**  (1) Unusually large number of parties
 **X** * (2) Unusually large number of claims or defenses
 **X** * (3) Factual issues are exceptionally complex
 **X**  (4) Greater than normal volume of evidence
 **X**  (5) Extended discovery period is needed
 ____  (6) Problems locating or preserving evidence
 ____  (7) Pending parallel investigations or action by government
 **X** (8) Multiple use of experts
 **X** (9) Need for discovery outside United States boundaries
 ____  (10) Existence of highly technical issues and proof
 ____  (11) Unusually complex discovery of electronically stored information

**\* Defendant does not agree.**

~ 13 ~

**The parties agree that the matter is complex.**

3.      **Counsel:**

The following individually named attorneys are hereby designated as **<u>lead</u>** counsel for the parties:

Plaintiffs:   **Jonathan L. Schwartz**
              **Larry D. Mason**

Defendant:   **Nicholas P. Panayotopoulos**
             **Ronald M. Schirtzer**
             **Jennifer A. Adler**

4.      **Jurisdiction:**

Is there any question regarding this Court's jurisdiction? **No.**

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection.   When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based.   Each objection should be supported by authority.

5.      **Parties to This Action:**

(a)      The following persons are necessary parties who have not been joined: **The parties do not anticipate any additional parties being added to the case.**

(b)      The following persons are improperly joined as parties:

qMenu maintains that Plaintiffs – CMO, a competitor of qMenu and P & F, a

customer of both CMO and qMenu – have been improperly joined into one action,

and that such joinder will be prejudicial not only to qMenu, but also potentially to P

& F and the alleged members of the putative class.  qMenu intends to file a Motion to Sever the claims of each Plaintiff from the other.

Plaintiffs disagree with qMenu's contention that there has been any improper joinder of parties or that severance is warranted here.   In particular, because Plaintiffs' allegations against qMenu are based on a common scheme to disrupt the business relationship between CMO and its clients, whereby qMenu attempted to wrest control of CMO's restaurant clients' GMB pages, and without any regard for the impact that its scheme would have on the restaurants' ability to conduct a take-out and food delivery operation, Plaintiffs contend that severance would be highly improper. Plaintiffs further contend that severance would be inefficient, require overlapping lawsuits, and waste party and judicial resources as a result of duplicative investigation, discovery, and expert witness testimony.

 (c)    The names of the following parties are either inaccurately stated or necessary portions of their names are omitted: **None.**

(d)    The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

## 6.    Amendments to the Pleadings:

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendments are contained in LR15.

(a)    List separately any amendments to the pleadings that the parties anticipate will be necessary:

**None.**

(b)    Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7.     Filing Times For Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)    *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)    *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c)    *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)    *Motions Objecting to Expert Testimony: Daubert* motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8.     Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).

**The parties request that the filing deadline for initial disclosures be extended through and including January 31, 2022.**

**9.     Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

Yes. The parties disagree on the timing and sequence of discovery. Plaintiffs contend that discovery begins when the Rule 26(f) conference is held or on a later date agreed to by the parties.  *See* Fed. R. Civ. P. 26(d)(1).  Plaintiffs also contend that discovery should be bifurcated into only two (2) phases; (1) liability - fact and expert discovery, and (2) damages – fact and expert discovery.

Defendant contends that pursuant to Local Rule 26.2, the discovery period shall commence thirty days after the appearance of the first defendant by answer to the complaint, unless the parties mutually consent to begin earlier.  Defendant has not answered the complaint and intends to file a motion to dismiss as to all counts on or before the January 10, 2022 deadline.  Defendant does not consent to commencement of discovery prior to the filing of an answer in the event its motion to dismiss is denied.  Defendant further believes that discovery should be divided into three phases, beginning with class action viability.

Plaintiffs disagree with both Defendant's interpretation of Local Rule 26.2 and the need for a separate initial discovery phase to address class action viability.

The parties are unable to reach a resolution on when and how discovery should proceed, which affects all deadlines which flow therefrom. Accordingly, the parties request a scheduling conference with the Court.

**10.   Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero-month discovery period, (b) four-month discovery period, and (c) eight-month discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

The parties respectfully request a twelve-month discovery period. Plaintiffs contend that the discovery period should commence on February 1, 2022. Defendant contends that discovery should commence thirty days after it files its Answer.

The parties believe that a twelve-month discovery period will allow sufficient time for the parties to exchange discovery and schedule depositions on mutually agreeable dates. The parties recognize that this Court only offers three discovery track periods: 0 months, 4 months, and 8 months, but ask that they be granted a 12-month discovery period due to the complex nature of this case and the locations of the witnesses involved. If, however, the Court is not inclined to grant a 12-month

discovery period, the parties ask that they be assigned to the 8-month discovery track.

Assuming this Court assigns the parties to the 8-month discovery track, Plaintiffs request that the discovery period be divided into the following phases: (1) Liability – fact and expert discovery; and (2) Damages- fact and expert discovery. Plaintiffs contend that the period for liability fact discovery would end on July 1, 2022, and the period for damages discovery would end on October 1, 2022.

Defendant requests that the twelve-month discovery period be divided into the following phases: (1) Class Action viability; (2) Liability – fact and expert discovery; and (3) Damages- fact and expert discovery. Should this Court deny all or part of Defendant's Motion to Dismiss, pursuant to Local Rule 26.2, discovery will commence thirty days after Defendant answers the Amended Complaint.  In the event the Court assigns an eight (8) month discovery track, Defendant requests an initial phase for completion of class action viability discovery (both fact and expert issues/witnesses) of ten (10) weeks; a second discovery phase for completion of liability (both fact and expert issues/witnesses) of ten (10) weeks; and a third phase for completion of damages (both fact and expert issues/witnesses) for the duration of the discovery period).  Defendant does not object to permitting liability and damage discovery to take place during the first and second phases.

Plaintiffs object to Defendant's proposed discovery plan. Plaintiffs contend that determinations about class certification would be premature until liability discovery is complete, and moreover, that discovery relating to the propriety of class certification would greatly overlap with all other liability discovery, rendering a first, separate phase on "class action viability" futile and inefficient. While Defendant may not object to liability and damage discovery taking place during the first and second phases, Plaintiffs contend that proposal will be ineffective in practice, as class certification will not be ripe until liability discovery is complete.

The parties request a scheduling conference with the Court to resolve this dispute.

Please state below the subjects on which discovery may be needed:

**<u>Plaintiffs' Subjects:</u>**

- For restaurants whose GMB listings Defendant began to manage or administer between May and July 2020, prior authorization or consent from those restaurants that Defendant may manage their GMB listings

- Claims by Defendant to Google between May and July 2020 to begin managing or administering restaurants' GMB listings

- Defendant's knowledge or awareness of a vulnerability in the GMB platform software between May and July 2020 which led to log-in credentials being sent to the party that requested the credentials

- Defendant's knowledge or awareness of any noncompliance with Google's Terms and Conditions

- Defendant's knowledge or awareness of Chinese Menu Online's relationships with restaurants whose GMB listings Defendant began to manage or administer between May and July 2020

- For restaurants whose GMB listings Defendant began to manage or administer between May and July 2020, Defendant's creation of online ordering websites that were linked to the GMB listings

- For restaurants whose GMB listings Defendant began to manage or administer between May and July 2020, commissions or revenue generated by the online ordering websites created or maintained by Defendant while those websites were linked to the restaurants' GMB listings

- Statements made by Defendant attempting to impersonate or mislead that Chinese Menu Online was the source of the statements

**<u>Defendant's Subjects</u>:**

(1)     All contracts, either oral or written, between CMO and any restaurants to manage its GMB listings and assist with online ordering, in exchange for a fee;

(2)     For restaurants whose GMB listings CMO managed or administered, prior authorization or consent from those restaurants that CMO may manage their GMB listings;

(3)     Any Party's knowledge or awareness of a vulnerability in the GMB platform software between May and July 2020 which led to log-in credentials being sent to the party that requested the credentials;

(4)     Any noncompliance by CMO with Google's Terms and Conditions;

(5)     Any GMB listing Plaintiffs contend qMenu "hijacked" or "diverted" to its own use;

(6)     Any GMB listings which CMO contends it lost due to qMenu's conduct;

(7)     Any alleged misrepresentations made by CMO to Google, restaurant owners and/or potential customers of any putative class member regarding its authorization to administer GMB listings;

(8)     Identification of any potential or actual restaurant customers of P & F with which it claims qMenu interfered;

(9)     Any damages asserted by Plaintiffs or members of the putative class, and the causation of any such damages;

(10)   The nature, source and quantity of any damages claimed by Plaintiffs or members of the putative class;

(11)   Whether P & F's claims can be asserted on behalf of a putative class;

(12)   Whether P & F is an adequate representative of the putative class;

(13)   Whether P & F's claims are common to those of the members of the putative class, typical to those of the members of the putative class, whether any common issues predominate over individualized issues of fact, whether P & F can prove damages on a class-wide basis and whether injunctive relief is proper with respect to the class as a whole.

qMenu reserves its right to oppose requests for discovery on any of the subjects set forth above on all grounds permitted under the Federal Rules of Civil Procedure.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Defendant wishes for discovery to be divided into three phases: class action viability, liability and damages, with each phase to have its own fact and**

**expert discovery.  Plaintiffs disagree and contend that discovery should instead be divided into two phases, as described above.**

**11.    Discovery Limitation and Discovery of Electronically Stored Information:**

(a)    What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

**The parties request that the deadline for filing initial disclosures be extended through and including January 31, 2022. The parties reserve their rights regarding any future requests for limitations or changes to the discovery rules.**

(b)    Is any party seeking discovery of electronically stored information? **Yes.**

If "yes,"

(1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

**The parties agree that discovery of ESI is needed but do not know the scope and extent of ESI that will be involved. At this time, the parties agree that ESI may be produced in .pdf format, except for Excel spreadsheets, which should be produced in native format, and photographs, which should be**

**produced in .pdf and native format. The parties expressly reserve the right to request any ESI in its native form.**

(2)     The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

**The parties shall meet and confer upon issues relating to electronically stored information at issue.  The parties agree that ESI may be produced in .pdf format, except for Excel spreadsheets, which should be produced in native format, and photographs, which should be produced in .pdf and native format. The parties expressly reserve the right to request any ESI in its native form.**

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.     Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

**Plaintiffs anticipate seeking a class certification order under Rule 23(c). Plaintiffs request a deadline of August 1, 2022 to file their motion for class certification, which would occur following the deadline to complete fact and expert discovery on liability issues in the case.**

Defendant believes that, following a ruling on the Motion to Dismiss and the setting of discovery deadlines, a deadline for Plaintiffs to file their Motion for Certification should be set.

The Parties further anticipate seeking entry of a Protective Order to govern the production and use of commercially or competitively sensitive confidential and/or trade secret information.

**13.    Settlement Potential:**

(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on **October 26, 2021** and on **December 22, 2021** and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For plaintiffs:      Lead counsel (signature): */s/ Jonathan L. Schwartz*
                     Other participants: Tyler Bryant Walker

For defendant:       Lead counsel (signature): */s/ Nicholas P. Panayotopoulos*
                     Other participants: Jennifer A. Adler

(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.
(___X___) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____) No possibility of settlement.

(c)    The parties **do** intend to hold additional settlement conferences among themselves prior to the close of discovery.

The parties are currently engaged in ongoing settlement discussions.

(d)     The following specific problems have created a hindrance to settlement of this case.  **None.**

## 14.     Trial by Magistrate Judge:

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)     The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day_____, of 20___.

(b)     The parties **do not** consent to having this case tried before a magistrate judge of this Court.

/s/ Jonathan L. Schwartz_____          /s/ Nicholas P. Panayotopoulos_____
Jonathan L. Schwartz (*pro hac vice*)          Nicholas P. Panayotopoulos
Larry D. Mason (*pro hac vice*)          Georgia Bar No. 560679
Goldberg Segalla LLP          Jennifer A. Adler
P.O. Box 957          Georgia Bar No. 585635
Buffalo, NY 14201          Weinberg, Wheeler, Hudgins, Gunn
(312) 572-8411 (Schwartz)          & Dial, LLC
(312) 572-8444 (Mason)          3344 Peachtree Road NE, Suite 2400
jschwartz@goldbergsegalla.com          Atlanta, Georgia 30326
lmason@goldbergsegalla.com          Tel. (404) 876-2700
          Fax: (404) 875-9433
Gregory L. Mast          npanayo@wwhgd.com
Georgia Bar No. 476191          jadler@wwhgd.com
Tyler Bryant Walker          *Attorneys for Defendant*
Georgia Bar No. 250477
Christopher S. Lee
Georgia Bar No. 621342
Fields Howell LLP
1180 W. Peachtree Street, NW
Suite 1600
Atlanta, GA 30309
Tel. (404) 214-1250

Fax: (404) 214-1251
gmast@fieldshowell.com
twalker@fieldshowell.com
clee@fieldshowell.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity, P & F INC. DBA HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated

       Plaintiffs,

v.

QMENU, INC., a Georgia corporation,

       Defendant.

Case No.:  1:21-cv-03949-SCJ

## CERTIFICATION OF COMPLIANCE

I certify that the foregoing document was prepared using double spacing and Times News Roman, 14-point font, as required by Local Rule 5.1(c).

This 23rd day of December, 2021.

**GOLDBERG SEGALLA LLP**

By: */s/ Jonathan L. Schwartz*
One of the Attorneys for Obento Limited dba Chinese Menu Online and P&F, Inc. dba Happiness Restaurant, on behalf of itself and all others similarly situated

32023385.v1

Gregory L. Mast
Tyler Bryant Walker
Christopher Sue-Min Lee
FIELDS HOWELL LLP
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA 30309
404-214-1250
gmast@fieldshowell.com
twalker@fieldshowell.com
clee@fieldshowell.com

Jonathan L. Schwartz (*pro hac vice*)
Larry D. Mason (*pro hac vice*)
GOLDBERG SEGALLA LLP
***Mailing Address:*** P.O. Box 957, Buffalo, NY 14201
***Physical Address:*** 222 W. Adams St., Suite 2250, Chicago, IL 60606
(312) 572-8411 (Schwartz); (312) 572-8444 (Mason)
jschwartz@goldbergsegalla.com
lmason@goldbergsegalla.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity, P & F INC. DBA HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated<br><br>    Plaintiffs,<br><br>v.<br><br>QMENU, INC., a Georgia corporation,<br><br>    Defendant. | Case No.:  1:21-cv-03949-SCJ |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 23, 2021, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system that will send an electronic notification to counsel of record for all parties.

**GOLDBERG SEGALLA LLP**

By: */s/ Jonathan L. Schwartz*
One of the Attorneys for Obento Limited dba Chinese Menu Online and P&F, Inc. dba Happiness Restaurant, on behalf of itself and all others similarly situated

32023385.v1

Gregory L. Mast
Tyler Bryant Walker
Christopher Sue-Min Lee
FIELDS HOWELL LLP
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA 30309
404-214-1250
gmast@fieldshowell.com
twalker@fieldshowell.com
clee@fieldshowell.com

Jonathan L. Schwartz (*pro hac vice*)
Larry D. Mason (*pro hac vice*)
GOLDBERG SEGALLA LLP
**Mailing Address:** P.O. Box 957, Buffalo, NY 14201
**Physical Address:** 222 W. Adams St., Suite 2250, Chicago, IL 60606
(312) 572-8411 (Schwartz); (312) 572-8444 (Mason)
jschwartz@goldbergsegalla.com
lmason@goldbergsegalla.com